NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Justice Rasideen ALLAH,

    Plaintiff,

v.

George HAYMAN, et al.,

    Defendants.

Civ. No. 08-1177

OPINION & ORDER

THOMPSON, U.S.D.J.

INTRODUCTION

    This matter comes before the Court upon Defendants Ahab Gabriel, Jawana Bethea, and Correctional Medical Services, Inc.'s ("CMS") Motion to Dismiss [docket # 59]. Although Plaintiff has been given several extensions of time to file his opposition, he has failed to respond to the motion. The Court has therefore decided the motion based upon Defendants' submissions and its own independent review of the Amended Complaint. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

    For purposes of this motion, the following factual allegations are accepted as true.

    Plaintiff has been confined for several years at New Jersey State Prison in Trenton, New Jersey. He alleges that prison officials have violated his rights under the Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution as well as state law because of actions they took in relation to the provision of medical care. He brings claims under 42 U.S.C. § 1983, the New Jersey Administrative Code, and the New Jersey Civil Rights Law.

1

Between June 30, 2006 and December 5, 2006, Plaintiff submitted a dozen request slips for medical records in special "sick-call boxes," which are located in each housing unit. On December 5, 2006, Plaintiff received a "Chart Summary" of his medical condition dated August 29, 2006 which listed two problems—"myopia" and "nevi, multiple"—which Plaintiff did not understand. He sent a letter to the CMS administrator asking to see a doctor and to receive his medical records. He received a response from Defendant Bethea on December 12, which advised Plaintiff to continue submitting requests into the sick-call boxes. Plaintiff submitted more requests, and on February 25, 2007, sent another letter to Defendant Bethea complaining that his requests were still being ignored. Bethea again responded asking Defendant to use the appropriate channels for his requests. On May 21, Plaintiff was forced to undergo TB testing through a crack in the door to his cell. The next day, a medical secretary named Ms. Butler visited Plaintiff at his cell, but Plaintiff refused to discuss any medical information except in a private setting. Plaintiff then filed a complaint on July 9 saying that his medical privacy rights were being violated. Bethea responded and said that medical testing was allowed to take place at a prisoner's cell. Plaintiff continued filing complaints through the end of 2007. Then on December 11, 2007, an unidentified medical official spoke to Plaintiff and asked him what his complaint was. Plaintiff refused to speak with anyone other than Defendant Jason Pugh, the CMS administrator. When Plaintiff was not able to meet with Pugh shortly thereafter, he filed additional complaints.

At some point in late 2007 or early 2008, Plaintiff was examined by Dr. Allan Martin. Martin ordered Plaintiff's blood pressure taken, and after seeing the results, ordered that Plaintiff be prescribed blood pressure pills. A few days later, Martin met with Plaintiff and informed him that Plaintiff's file revealed that he had been diagnosed with high blood pressure back in 2002,

and that the physician who had made that diagnosis had ordered that Plaintiff's blood pressure be closely monitored.

Plaintiff finally met with Pugh on January 28, 2008, and he reiterated his complaints. At that meeting Pugh acknowledged that follow up visits with a doctor should have occurred after the 2002 and 2006 diagnoses. Pugh also acknowledged that Plaintiff had the right to speak with a doctor in private and that medical personnel should not conduct interviews at prisoners' cells within earshot of other inmates. However, since his meeting with Pugh, Plaintiff has still been given medical evaluations at his prison cell and has been refused medical care in a private setting.

## ANALYSIS

I. Standard of Review

A Defendant may, in lieu of filing an answer, move to dismiss a Complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). By rule, a "claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Therefore, if a Complaint does not "show[] that the pleader is entitled to relief," it should be dismissed.

In order to show an entitlement to relief, a plaintiff must plead sufficient factual matter to enable a court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). As the Third Circuit has noted, this requires the Court to undertake a two-step analysis:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949-50). At step one, the Court sets aside any legal conclusions and "recitals of elements of a cause of action." *Iqbal*, 129 S.Ct. at 1949. At step two, the Court accepts the remaining allegations as true and assesses whether or not they support a reasonable inference that the defendant is liable. *Id.* Rather than alleging facts that are "'merely consistent with' a defendant's liability," the Complaint must allege facts that, if true, "give rise to an entitlement to relief." *Id.* at 1949-50 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In other words, an inference of liability is not reasonable—and thus dismissal is required—if the factual allegations in the complaint are more likely explained by lawful behavior than unlawful behavior. *Id.* at 1950.

In performing this analysis, the judge may only assess the plausibility of the plaintiff's legal claims in light of the facts alleged. The judge may not assess the plausibility of the alleged facts themselves. The Court must accept well-pleaded facts as true (*id.*), even if "actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

II. Claims Against Defendant Bethea

    A. Federal Constitutional Claims[1]

        1. Plaintiff's Claim for Inadequate Medical Care

To establish an Eighth Amendment violation in this context, a plaintiff must show that each defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference" is akin to criminal recklessness, and

---

[1] Courts have an obligation to construe pro se filings liberally and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999). Plaintiff ostensibly brings claims under the Eighth, Ninth, and Fourteenth Amendments. As the Court reads the Complaint, Plaintiff is attempting to assert claims for inadequate medical care in violation of the Eighth Amendment's prohibition against cruel and unusual punishment and Fourteenth Amendment claims for violation of privacy. In this case, the Ninth Amendment provides no additional relief beyond what is already guaranteed by the Eighth and Fourteenth Amendments.

it exists when the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Specific examples of deliberate indifference include situations "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). However, negligence or medical malpractice does not of itself qualify as deliberate indifference. *Estelle*, 429 U.S. at 105-06. Nor does "mere disagreement over acceptable treatment" amount to a constitutional violation. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). Furthermore, a medical need is only sufficiently "serious" to trigger the protection of the Eighth Amendment if it has been diagnosed by a physician as in need of treatment or if it is so obvious that even a layperson would recognize that a doctor's attention is required. *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003). A medical need is also sufficiently serious if the denial of treatment would lead to unnecessary pain or permanent damage. *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987).

In this case, Plaintiff's allegations do not support a plausible inference that Defendant Bethea was deliberately indifferent to Plaintiff's serious medical needs. The only serious medical need contained in the Amended Complaint is Plaintiff's high blood pressure, which apparently was diagnosed in both 2002 and 2006. There are no factual allegations suggesting that Bethea was deliberately indifferent to this need. Plaintiff alleges that Bethea did not respond adequately to his requests for medical records, but these requests are unrelated to his high blood

pressure problem.  Furthermore, there is nothing in the record to support an inference that Bethea was aware of Plaintiff's high blood pressure prior to Dr. Martin's diagnosis in 2006.  Plaintiff's allegations that Bethea "did knowingly and reckless [*sic*] demonstrate deliberate indifference" and that Bethea's actions "were motivated by evil motive or intent" are conclusory in nature and are accordingly disregarded under *Iqbal's* two step analysis.  Since Plaintiff has not alleged facts showing that Bethea was deliberately indifferent, he fails to make out an Eighth Amendment claim.

Plaintiff's claim that medical testing in prison cells violated the Eighth Amendment is not supported either.  None of Plaintiff's allegations support the inference that such testing creates such a serious medical problem as to implicate the Eighth Amendment.

2. <u>Plaintiff's Claim for Violation of his Right to Privacy</u>

The Fourteenth Amendment gives persons a right to keep their medical records confidential, and this right extends beyond more obviously embarrassing medical facts to include things like prescriptions and the "results of routine testing, such as X-rays, blood tests, pulmonary function tests, hearing and visual tests." *Doe v. Se. Penn. Transp. Auth.*, 72 F.3d 1133, 1138 (3d Cir. 1995).  Prisoners also have a right to keep their medical information private, though this right is "subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001).  In determining whether a particular restriction is justified by correctional goals, a court analyzes four factors:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational. Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison

> resources generally. And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Id.* (citing *DeHart v. Horn,* 227 F.3d 47, 51 (3d Cir.2000)).

In this case, Plaintiff complains of being forced to take medical tests through the door of his own cell and of various prison personnel attempting to conduct medical evaluations at his cell. These allegations do not support a plausible inference that Plaintiff's privacy rights under the Fourteenth Amendment have been violated. The Fourteenth Amendment protects a prisoner's confidential medical information from being disclosed. While disclosing the results of a routine test may violate the Fourteenth Amendment, merely conducting that test in a public setting does not result in the disclosure of any confidential information. Furthermore, the fact that various prison personnel may have asked Plaintiff about medical information in a public setting does not of itself violate any confidentiality. Plaintiff apparently refused to discuss his medical conditions in public, as was his right. Defendants would only have violated Plaintiff's privacy rights if they disclosed confidential information. There are no allegations of such disclosure.

    B.  <u>State Law Claims</u>

Plaintiff alleges that Defendants violated the New Jersey Administrative Code, §§ 10A:5-2.23(a), 10A:5-2.25(a)-(c), and 10A:4-3.1(a)(1). He also alleges that Defendants violated the New Jersey Civil Rights Act. N.J. Stat. Ann. § 10:6-1 et seq. Defendants do not analyze any of these claims in their motion to dismiss. Rather, they analyze whether Defendants violated N.J. Admin. Code § 10A:22-2.7. Plaintiff does not bring any claims under this section.

Defendant's argument that the New Jersey Administrative Code is not enforceable under 42 U.S.C. § 1983 is irrelevant to Plaintiff's state law claims. Plaintiff is, from all appearances,

asserting claims directly under the administrative code. Plaintiff is only asserting his federal constitutional claims under 42 U.S.C. § 1983. As Defendants have not briefed whether a private right of action exists under the New Jersey Administrative Code, the Court will not consider that question at this time.

   III. Claims Against Defendant CMS

A plaintiff can only assert claims under 42 U.S.C. § 1983 against a non-person entity if that entity maintained a policy or custom that caused the alleged constitutional violations. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). With regard to Plaintiff's Eighth Amendment allegations, Plaintiff has not alleged any facts to demonstrate a policy or custom of denying necessary medical care to inmates generally or Plaintiff specifically. While it appears that Plaintiff's high blood pressure went untreated for some time, there are no facts alleged which support the inference that this was the result of a policy maintained by CMS.

Nor does the Amended Complaint support an inference that CMS maintained a policy that caused the violation of Defendant's privacy rights. While Plaintiff alleges that various medical personnel have discussed medical issues with inmates in public, there are no allegations that any medical information was ever disclosed without anybody's consent.

   IV. Claims Against Defendant Gabriel

There are not any factual allegations concerning Defendant Gabriel contained within the Amended Complaint itself, other than allegations as to Gabriel's identity. It appears from the appendix to the Amended Complaint that Gabriel is the doctor who performed blood work on Plaintiff in or about April 2006. There are no allegations suggesting that he at any time violated any state law or the U.S. Constitution. Therefore, the claims against him must be dismissed.

## CONCLUSION

For the foregoing reasons, it is ORDERED, this 19th day of March, 2010, that Defendants Ahab Gabriel, Jawana Bethea, and Correctional Medical Services, Inc.'s Motion to Dismiss [docket # 59] is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that Plaintiff's Eighth, Ninth, and Fourteenth Amendment claims are dismissed as against Defendants Bethea and Correctional Medical Services; and it is further

ORDERED that all claims against Defendant Gabriel are DISMISSED.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.