<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Justice Rasideen ALLAH, | |
| Plaintiff, | Civ. No. 08-1177 |
| v. | OPINION & ORDER |
| George HAYMAN, et al., | |
| Defendants. | |

<u>THOMPSON, U.S.D.J.</u>

## I.  <u>INTRODUCTION</u>

This matter comes before the Court upon Defendants Jawana Behea and Correctional Medical Services, Inc.'s ("CMS") (collectively, "CMS Defendants") Motion to Dismiss [docket # 106] and upon Defendants Jeffrey Bell, George Hayman, Crystal Raupp, Michele R. Ricci, and Steckel's (collectively, "State Defendants") Motion for Judgment on the Pleadings [110].  The Plaintiff opposes both motions.  The Court has decided the matter after considering the parties' written submissions and without holding oral argument, pursuant to Fed. R. Civ. P. 78(b).  For the reasons set forth below, both motions are granted.

## II.  <u>BACKGROUND</u>

The following allegations are taken from Plaintiff's Amended Complaint [30].  Plaintiff has been confined for several years at New Jersey State Prison in Trenton, New Jersey.  He alleges that prison officials have violated his rights under the Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution as well as state law because of actions they took in relation

1

to the provision of medical care.  He brings claims under 42 U.S.C. § 1983, the New Jersey

Administrative Code, and the New Jersey Civil Rights Act.

Between June 30, 2006, and December 5, 2006, Plaintiff submitted a dozen request slips

for medical records in special "sick-call boxes," which are located in each housing unit.  (Am.

Compl. ¶ 25) [30].  On December 5, 2006, Plaintiff received a "Chart Summary" of his medical

condition dated August 29, 2006, which listed two problems—"myopia" and "nevi, multiple"—

which Plaintiff did not understand.  (Am. Compl. Ex. A) [30-1].  He sent a letter to the CMS

administrator asking to see a doctor and to receive his medical records.  (*Id.*); (Am. Compl. ¶ 25.)

He received a response from Defendant Bethea on December 12, which advised Plaintiff to

continue submitting requests into the sick-call boxes.  (Am. Compl. ¶ 26.)  Plaintiff submitted

more requests, and on February 25, 2007, sent another letter to Defendant Bethea complaining

that his requests were still being ignored.  (*Id.* ¶ 28.)  Bethea again responded asking Plaintiff to

use the appropriate channels for his requests.  (*Id.*)  On May 21, Plaintiff was forced to undergo

TB testing through a crack in the door to his cell.  (*Id.* ¶ 32.)  The next day, a medical secretary

named Ms. Butler visited Plaintiff at his cell, but Plaintiff refused to discuss any medical

information except in a private setting.  (*Id.* ¶ 30–31.)  Plaintiff then filed a complaint on July 9

saying that his medical privacy rights were being violated.  (*Id.* ¶ 32.)  Bethea responded and said

that medical testing was allowed to take place at a prisoner's cell.  (*Id.* ¶ 33.)  Plaintiff continued

filing complaints through the end of 2007.  (*Id.* ¶ 34–35.)  Then on December 11, 2007, an

unidentified medical official spoke to Plaintiff and asked him what his complaint was.  (*Id.* ¶ 36–

37.)  Plaintiff refused to speak with anyone other than Defendant Jason Pugh, the CMS

administrator.  (*Id.*)  When Plaintiff was not able to meet with Pugh shortly thereafter, he filed

additional complaints.  (*Id.* ¶ 39–44.)

At some point in late 2007 or early 2008, Plaintiff was examined by Dr. Allan Martin. Martin ordered Plaintiff's blood pressure taken, and after seeing the results, ordered that Plaintiff be prescribed blood pressure pills.  (*Id.* ¶ 44–49.)  A few days later, Martin met with Plaintiff and informed him that Plaintiff's file revealed that he had been diagnosed with high blood pressure back in 2002, and that the physician who had made that diagnosis had ordered that Plaintiff's blood pressure be closely monitored.  (*Id.* ¶ 50–52.)

Plaintiff finally met with Pugh on January 28, 2008, and he reiterated his complaints.  (*Id.* ¶ 53.)  At that meeting Pugh acknowledged that follow up visits with a doctor should have occurred after the 2002 and 2006 diagnoses.  Pugh also acknowledged that Plaintiff had the right to speak with a doctor in private and that medical personnel should not conduct interviews at prisoners' cells within earshot of other inmates.  (*Id.* ¶ 53–56.)  However, since his meeting with Pugh, Plaintiff has still been given medical evaluations at his prison cell and has been refused medical care in a private setting.  (*Id.* ¶ 56.)

Plaintiff commenced this action on March 7, 2008 [1].  The Court granted him leave to amend his complaint to add an additional defendant.  [See docket # 17, 30].  The Court has twice rejected Plaintiff's requests for a preliminary injunction.  [See docket # 17, 34].  On March 22, 2010, the Court granted in part and denied in part a motion to dismiss filed by Defendants CMS, Bethea, and Ahab Gabriel.  (Opinion & Order, Mar. 22, 2010) [69].  In that Opinion, the Court dismissed Plaintiff's constitutional claims brought against Defendants CMS, Bethea, and Gabriel under 42 U.S.C. § 1983, but deferred consideration of Plaintiff's state law claims against Bethea and CMS until those issues were properly briefed.  (*Id.* at 4–8.)

Bethea and CMS now move to dismiss the remaining state law claims.  (CMS Defts.' Mot to Dismiss 2) [106].  Also, the State Defendants move for judgment on the pleadings,

arguing that Plaintiff has failed to allege any personal involvement by these Defendants and has

failed to set forth any constitutional violations.  (State Defts' Mot for J. Pleadings 2) [110].

## III. CMS DEFENDANTS' MOTION TO DISMISS

### A.  Legal Standard for Motion to Dismiss

Under Rule 12(b)(6), a defendant bears the burden of showing that no claim has been

presented.  Fed. R. Civ. P. 12(b)(6); *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

When considering a 12(b)(6) motion, a district court must accept as true all of a plaintiff's well-

pleaded factual allegations and construe the complaint in the light most favorable to plaintiff, but

may disregard any legal conclusions.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d

Cir. 2009).  Once the well-pleaded facts have been identified, a court must determine whether the

"facts are sufficient to show that plaintiff has a 'plausible claim for relief.'"  *Id.* (quoting

*Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009)).  A claim is only plausible if the

facts pleaded allow a court reasonably to infer that the "defendant is liable for the misconduct

alleged."  *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948).  Facts suggesting the "mere possibility of

misconduct" fail to show that the plaintiff is entitled to relief.  *Id.* at 211 (quoting *Iqbal*, 129 S.

Ct. at 1949).

### B.  New Jersey Civil Rights Act Claims

The New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq.*, is a state law

analogue to 42 U.S.C. § 1983—it creates a private right of action for the violation of civil rights

secured by the Constitution and laws of the state of New Jersey and the Constitution and laws of

the United States.  Accordingly, NJCRA is generally interpreted to be coextensive with its

federal counterpart.  *See Celestine v. Foley*, 2010 WL 5186145, at *6 (D.N.J. 2010); *Jefferson v.

*Twp. of Medford*, 2010 WL 5253296, at *13 (D.N.J. 2010); *Chapman v. New Jersey,* 2009 WL 2634888, at *3 (D.N.J. 2009); *Slinger v. New Jersey,* 2008 WL 4126181, at *5 (D.N.J. 2008), *rev'd in part on other grounds*, 366 F. App'x 357 (3d Cir. 2010).

Because the Court has already found that Plaintiff has failed to state a claim for violation of his civil rights under § 1983, (Opinion & Order 4–8, Mar. 22, 2010) [69], his NJCRA claims based on the exact same conduct must also be dismissed.  In our previous opinion, we found that Plaintiff's conclusory allegations were insufficient to show that Defendant Bethea was deliberately indifferent to any serious medical need Plaintiff had.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding that Eighth Amendment claim for inadequate medical care requires showing of deliberate indifference to serious medical needs).  Next, we stated that Plaintiff's Fourteenth Amendment right to keep his medical records confidential had not been violated because there was no allegation that his records or any medical facts had been disclosed.  *See Doe v. Se. Penn. Transp. Auth.*, 72 F.3d 1133, 1138 (3d Cir. 1995).  Finally, we dismissed the constitutional claims against CMS because we found that Plaintiff had not alleged any facts to demonstrate a policy or custom of denying necessary medical care to inmates generally or disclosing medical information without consent.  *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003) (holding that § 1983 claim against non-person entity requires showing of policy or custom that caused alleged constitutional violation).  Plaintiff's NJCRA claims are based on the same underlying conduct, and accordingly, must be dismissed for the same reasons we dismissed his § 1983 claims.

To the extent that Plaintiff's NJCRA claims are based on alleged violations of the New Jersey Constitution, those claims also cannot survive because claims under the New Jersey Constitution that implicate equivalent provisions in the United States Constitution are to be

analyzed under authority relating to the federal provisions.  Concerning Plaintiff's right to privacy claim, the New Jersey Supreme Court has held that "[i]n cases raising substantive due process claims under our state constitution, this Court uses the 'standards developed by the United States Supreme Court under the federal Constitution,'" meaning that analysis of the claim "is the same under both constitutions."  *Roman Check Cashing, Inc. v. New Jersey Dep't of Banking and Ins.*, 777 A.2d 1, 3 (N.J. 2001) (quoting *State Farm Mut. Auto. Ins. Co. v. State*, 590 A.2d 191, 198 (N.J. 1991)).  Therefore, Plaintiff's claim would be subjected to dismissal for the same reason we dismissed his Fourteenth Amendment claim: he has not shown that any confidential medical records or facts had been disclosed.  Concerning Plaintiff's claim for inadequate medical care, "[c]ourts in this District have recognized that the Eighth Amendment and the parallel paragraph in the New Jersey Constitution have been interpreted to provide congruent relief in the deliberate indifference context."  *Jumpp v. Power*, 2009 WL 1704307, at *4 (D.N.J. 2009) (collecting cases).  Because we have already found that Plaintiff's Complaint fails to provide a sufficient basis to support a claim that the Defendants acted with deliberate indifference, his state constitutional claims fail as well.

### C.  New Jersey Administrative Code Claims

Plaintiff alleges that Defendants violated the New Jersey Administrative Code ("NJAC"), §§ 10A:5-2.23(a), 10A:5-2.25(a)-(c), and 10A:4-3.1(a)(1).  We treat each allegation in turn.

N.J.A.C. § 10A:5-2.23(a) provides that: "[i]nmates in the M.C.U. [Management Control Unit] shall be visited daily during the business week by a member of the correctional facility's professional staff to determine any emergency or unusual needs of the inmates and to make referrals to appropriate departments or staff members."  Plaintiff's claim must be dismissed because he has failed to allege the necessary facts to support this claim.  Nowhere does the

Complaint state that the Defendants failed to visit him daily to determine his medical needs, or even that he had any emergency or unusual needs.

Next, N.J.A.C. § 10A:5-2.25(a)-(c) states:

(a) Treatment programs shall be available in the M.C.U. to at least the same extent as available to the general inmate population. Social workers and a psychologist shall be assigned to the M.C.U. and an area or office shall be provided for these services. The professionals shall provide services consistent with those provided to the general population and shall work closely with the M.C.U. supervisor and staff.

(b) Counseling sessions shall be arranged upon the request of an inmate confined in the M.C.U. Counseling shall be coordinated by the professional staff assigned to the M.C.U.

(c) Two interview rooms shall be available within the M.C.U. for use by the assigned professional staff, the M.C.U. supervisor, the parole counselor, and professional representatives of outside agencies such as, but not limited to, the Social Security Administration, the Veteran's Administration, and vocational rehabilitation agencies.

Again, Plaintiff's Complaint is defective because it fails to allege any conduct by the Defendants that would support a claim under these administrative provisions.  Nowhere does he state that he was denied access to treatment programs, social workers or psychologists, counseling sessions, or interview rooms.  Accordingly, these claims must be dismissed as well.

Finally, N.J.A.C. § 10A:4-3.1(a)(1) provides that inmates "have the right to be treated respectfully, impartially and fairly by all personnel."  Although Plaintiff may feel aggrieved by his treatment, a thorough review of the Complaint shows that there is no factual basis to support the inference that the Defendants acted in any way disrespectful, partial, or unfair.  Indeed, Plaintiff's own Complaint shows that the Defendants responded to his complaints (*see, e.g.,* Am. Comp. ¶ 26, 29, 31, 33, 35, 36, 39, 40, 42, 43), provided him with medical treatment, (*see, e.g., id*. ¶ 39, 44–49, 50, 52, 55, 59), and generally behaved in a professional manner, (*see, e.g., id*. ¶ 31, 36–37, 53).  Therefore, we will dismiss this claim.

### D.  Plaintiff's Breach of Contract Claims

Plaintiff's Complaint also alleges that CMS breached its contract with the New Jersey Department of Corrections (DOC).  (Am. Compl. 4.)  Although the Defendants do not address this claim in their motion, we will address it *sua sponte*.  We find that Plaintiff cannot assert a claim based on the contract between CMS and the DOC because Plaintiff is not an intended third-party beneficiary of that contract.  A third party can maintain an action based on a contract only if he is a "person for whose benefit the contract is made," N.J.S.A. 2A:15-2, which requires that "the contracting parties have expressly intended for that third-party to receive a benefit which might be enforced in the courts."  *Washington v. Corr. Med. Servs.*, 2006 WL 1210522, at *5 (D.N.J. 2006) (quotations omitted).  We are not the first court to consider whether an inmate can assert a claim based on the contract between CMS and the DOC.  Other courts in this District have unanimously concluded that the CMS–DOC contract does not provide an inmate with standing to sue, and we find no reason to depart from their sound logic.  *See Warnett v. Corr. Med. Servs.*, 2008 WL 930739, at *8 (D.N.J. 2008) (citing *Mann v. Barbo*, Civ. No. 00-2215 (D.N.J. July 24, 2001); *Allmond v. McDowell*, Civ. No. 98-3733 (D.N.J. April 16, 2001)).  Accordingly, we dismiss this claim against Defendant CMS.


### IV. <u>STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>

### A.  Legal Standard for Motion for Judgment on the Pleadings

Under Rule 12(c) of the Federal Rules of Civil Procedure, a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 12(c); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008).  The standard governing a Rule 12(c) motion is the same one

governing motions to dismiss under Rule 12(b)(6).  *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d

Cir. 2004).  The Court must accept the nonmoving party's well-pleaded factual allegations as

true and construe those allegations in the light most favorable to the nonmoving party, but the

Court will disregard any unsupported conclusory statements.  *DiCarlo*, at 262–63.  In this case,

the State Defendants are the moving party, so the Court accepts as true all well-pleaded factual

allegations in Plaintiff's Complaint.

### B.  Constitutional Claims Under 42 U.S.C. § 1983

Plaintiff alleges that the State Defendants violated his rights under the Eighth, Ninth, and

Fourteenth Amendments, as secured by 42 U.S.C. § 1983.  The State Defendants argue that

Plaintiff has failed to show that any of these defendants, as supervisors over CMS, had any

personal involvement in the alleged wrongs.  (State Defts. Mot. for J. Pleadings 10) [110].

Section 1983 liability cannot be premised solely on a theory of *respondeat superior*.

*Natale*, 318 F.3d at 583–84.  Rather, a supervisor must be personally involved in the alleged

wrongs.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  There are two theories of

supervisory liability under which supervisors can be found to have been personally involved: (1)

if they "established and maintained a policy, practice or custom which directly caused [the]

constitutional harm;" and (2) if they "participated in violating plaintiff's rights, directed others to

violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their]

subordinates' violations."  *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572,

586 (3d Cir. 2004) (citations omitted).

We need not address whether the State Defendants can be liable as supervisors for the

alleged wrongs because, more fundamentally, we have already found that the alleged wrongs did

not amount to constitutional violations.  Defendant Ricci is the only State Defendant against

whom any factual allegation was made, and Plaintiff only alleged that she directed CMS to conduct medical testing at the inmates' cells.  (Am. Compl. ¶ 5–9, 62.)  The other Defendants are only implicated, Plaintiff claims, because he alleged that his complaints were forwarded to the "prison administration."  (Pl.'s Mem. in Opp'n to State Defts.' Mot. 9) [117].  However, as discussed earlier, the Court previously found that the medical testing did not violate Plaintiff's constitutional rights: the CMS Defendants were not deliberately indifferent to any medical needs Plaintiff had, and there was no disclosure of confidential medical information.  (Opinion & Order 4–8, Mar. 22, 2010) [69].  Because the CMS Defendants did not violate Plaintiff's constitutional rights, the State Defendants cannot be held liable in a supervisory capacity.

### C.  New Jersey Civil Rights Act Claims

As we stated previously, the NJCRA is a state law analogue to § 1983 and is generally interpreted in the same manner.  *See Celestine*, 2010 WL 5186145, at *6.  Because the Court has already found that Plaintiff has failed to state a claim for violation of his civil rights under § 1983, his NJCRA claims based on the exact same conduct must also be dismissed.

### D.  New Jersey Administrative Code Claims

Finally, we must dismiss Plaintiff's claims under the NJAC for the same reason we dismissed these claims against Defendants CMS and Bethea: Plaintiff has failed to allege a sufficient factual basis to support these claims, either against the CMS Defendants or the State Defendants.

<u>CONCLUSION</u>

For the foregoing reasons, IT IS on this 1st day of April, 2011,

ORDERED that Defendants Jeffrey Bell, George Hayman, Crystal Raupp, Michele R. Ricci, and Steckel's Motion for Judgment on the Pleadings [docket # 110] is GRANTED; and it is further

ORDERED that Defendants Jawana Bethea, and Correctional Medical Services, Inc.'s Motion to Dismiss [docket # 106] is GRANTED; and it is further

ORDERED that all claims against Jawana Bethea, Correctional Medical Services, Inc., Jeffrey Bell, George Hayman, Crystal Raupp, Michele R. Ricci, and Steckel are DISMISSED.


*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

11